IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

KIMBERLY WILLIAMS, )
        Plaintiff, )
        )
v. )
        )
EEG, INC. d/b/a )
EMPIRE EDUCATION GROUP, )
INC., )
        Defendant. )

## COMPLAINT

(Jury Trial Demanded)

NOW COMES Plaintiff, Kimberly Williams, and for her complaint against EEG, Inc., d/b/a Empire Education Group, Inc., and alleges and says as follows:

## PARTIES

1. Plaintiff, Kimberly Williams (hereinafter "Plaintiff"), is a citizen and resident of Greensboro, Guilford County, North Carolina.

2. Defendant, EEG, Inc. d/b/a Empire Education Group, Inc. (hereinafter "EEG" or "Defendant") is a Delaware Corporation with its principal place of business in Pottsville, Schuylkill County, Pennsylvania.

3. Defendant owns and operates Empire Beauty School (hereinafter "EBS") located at 1312 Bridford Parkway #105 in Greensboro, Guilford County, North Carolina.

## JURISDICTION AND VENUE

4. Plaintiff realleges the foregoing paragraphs and incorporates them herein by reference.

1

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question), and 28 U.S.C. §1343 (civil rights) as Plaintiff's complaint alleges, *inter alia*, that Defendant violated The Americans with Disabilities Act as Amended, 42 U.S.C. § 12101, *et. seq.*, and Section 504 of the Rehabilitation Act of 1983, 29 U.S.C. §701, *et. seq*.

6. This Court has personal jurisdiction over the parties as Plaintiff is a citizen and resident of the Middle District of North Carolina, and Defendant is a public education entity doing business in the Middle District of North Carolina.

7. Venue in this court is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to the claims occurred at Defendant's Greensboro, North Carolina campus which is located in the Middle District of North Carolina

## FACTUAL ALLEGATIONS

8. Plaintiff realleges the foregoing paragraphs and incorporates them by herein reference.

9. In or about April 2018, Plaintiff began the two (2) year cosmetology evening program (hereinafter "the Program") at Defendant's Greensboro, North Carolina campus.

10. Defendant accepted Plaintiff's financial aid package at the inception of the 2020-2021 academic year which, upon information and belief, included federal funds.

11. Upon information and belief, Defendant never provided any of the students with a student handbook before enrollment, during the enrollment process, or after the student was enrolled.

12. Plaintiff, at thirty-six (36) years of age, was older than most of the students enrolled in the program, who, upon information and belief, generally ranged from eighteen (18) years old to twenty-five (25) years old.

13. Plaintiff is a reserved introvert, and a single mother. Plaintiff also maintained full time employment while enrolled in the Program. Due to Plaintiff's parental and work obligations, as well as her personality, she rarely socialized with her classmates in the Program outside of school.

14. Plaintiff was, by all accounts, a good student. She maintained good grades, passed her tests, met her academic requirements and otherwise was eligible to continue in the program.

15. When Plaintiff enrolled the Program, she was advised that the students perform cosmetology services on one another as part of their training. Plaintiff asked if this was mandatory due to having a specific hair routine and preferred hairdresser. Plaintiff was told it is not mandatory.

16. In or about March 2020, Defendant ceased in-person classes and services due to the COVID-19 pandemic.

17. On or around June 5, 2020, Plaintiff and her classmates returned to in-person instruction.

18. On or about July 9, 2020, Tina Aistrop, the Director of the Program, asked all students to complete a "Transfer and Re-Enter" form which provided that upon returning to in-person instruction, students were not permitted to perform cosmetology services on the public or one another.

19. In August 2020, Defendant began accepting public clients again by appointment only. Defendant would only permit four clients to be in the building, performed temperature checks and required clients to make appointments at least twenty-four hours in advance.

20. Defendant informed students that if they did not feel comfortable performing services on the public or other students due to COVID-19, they could remain in the Program so long as they were "working" while in the building. Working included performing services on mannequin heads, completing book work, and studying for boards. Students who were comfortable accepting public clients would rotate.

21. Plaintiff elected not to participate in performing services on the public or her classmates. Nonetheless, she was still present in the classroom and working as required.

22. On August 24, 2020, Plaintiff was in a car accident in which she sustained injuries to her head, neck, back, abdomen, and right knee. Plaintiff was unable to stand, walk, sit, bend her right leg, turn her head or drive for several months. Plaintiff's medical providers advised her to take some time off from school in order for her body to heal. When Plaintiff was finally able to stand and walk, she had to use a cane and knee brace. Additionally, to relieve the effects of TMJ caused by the accident, Plaintiff had to wear a brace around her head, fill a bag with water and sit down for ten (10) to fifteen (15) minutes when experiencing severe TMJ symptoms.

23. Due to Plaintiff's temporary disabilities associated with the car accident, she was unable to attend class, much less, perform services for customers. Plaintiff provided doctors' notes to Defendant concerning her disabilities, and the need for accommodations.

24. When Plaintiff was unable to attend, or late to class in her program, she would often attend Defendant's "after school" program from 4:30 p.m. until 5:30 p.m. to make up her hours.

25. Plaintiff continued to study, try to attend class, and complete the required work without physically touching clients or her classmates. On some nights, Plaintiff, while seated and despite excruciating pain, would complete five (5) hairstyles on the mannequin head in one night. Around this time, Defendant's staff inexplicably began to follow Plaintiff as she moved about the building, including when she went to use the restroom or the breakroom.

26. Upon information and belief, at all times relevant to this action, Defendant did not have an Office of Disability Services, or comparable office, to assist students with disabilities who needed accommodations. Nonetheless, Plaintiff requested a reasonable accommodation of being able to demonstrate the learned skills on the mannequin head the Program required her to purchase.

27. On September 9, 2020, each student had to sign a "COVID-19 Enrollment Addendum". The addendum included a disclaimer concerning services received from other students; specifically, the disclaimer provided that students agreed to release Defendant, its students, instructors, or other personnel from any liability concerning services the student receives. Plaintiff again elected not to perform services on the public or her peers.

28. On or about September 22, 2020, Ms. Aistrop and Jandelyn Keiger, an instructor with the Program, asked the evening students to gather around a desk while they went over

5

a one page Family Education Right to Privacy Act Policy ("FEPRA") document. The students were asked to stand around the desk as the FERPA document was read. Plaintiff was unable to stand due to her disabilities. Additionally, upon information and belief, the discussion of the FERPA policy in this manner violated Defendant's social distancing policy.

29. Ms. Keiger, upset that Plaintiff did not join the others, demanded that Plaintiff come to the desk. Plaintiff reminded Ms. Keiger of her disabilities and advised that she would follow along on the copy of the FERPA document Ms. Keiger provided to the students as Ms. Keiger read and discussed it.

30. On September 28, 2020, Plaintiff took a quiz on Salon Design Principles. She scored a 100%.

31. In or about September 2020, Ms. Airstrop informed Plaintiff she would have to submit transcripts from her prior educational institution. According to Ms. Airstrop, Defendant was requiring students who previously received financial aid from a different institution to submit transcripts from their prior institutions. Ms. Aistrop informed Plaintiff that she could not work or continue in the program until she provided the requested transcripts. Upon information and belief, this requirement was not placed on other non-disabled students.

32. On October 28, 2020, Plaintiff was advised by a classmate that Defendant's faculty asked them, and other classmates to "watch" and "monitor" Plaintiff to see if she was completing more than two (2) or three (3) hairstyles on her mannequin head in one night. As a result, Plaintiff began documenting the styles she completed each night.

33. Throughout October and November 2020, Plaintiff presented doctor's notes for her injuries including recommendations that Plaintiff not stand up for long periods of time. Plaintiff still attending the program, worked on the mannequin heads while seated, studied for tests, or otherwise engaged in permissible activities while she was at the Program. Ms. Aistrop and Ms. Keiger not only questioned the veracity of Plaintiff's injuries and her doctor's notes, but also discussed Plaintiff's medical conditions in the presence of her classmates.
34. On November 5, 2020, Ms. Keiger assigned Plaintiff a client but did not inform Plaintiff. Once Plaintiff realized she was assigned a client, she reminder Ms. Keiger of her reliance on a cane and her inability to stand for long periods of time. Ms. Keiger told Plaintiff that she was required to accept the client despite Plaintiff's need for accommodations.
35. Plaintiff set up her workstation as best she could in preparation for the client. She introduced herself to the client, escorted the client to her workstation, and asked the client what she would like done. Ms. Keiger approached Plaintiff and the client and informed the client another student would complete her services.
36. Despite being embraced in front of the client and her classmates, Plaintiff quietly went to her locker, retrieved her mannequin head, and completed hairstyles on the mannequin, while seated, for the remainder of the evening.
37. On November 11, 2020, Plaintiff took a quiz on Salon Skin care and scored a 96%.
38. On November 30, 2020, Plaintiff took test on Salon Skin Care and scored an 84%.

39. On or about December 3, 2020, Plaintiff was released by her doctor to resume cosmetology activities on the floor.

40. On or about December 4, 2020. Plaintiff arrived at EBS around 6:15 p.m. When she walked in, Ms. Keiger was assigning a client to Plaintiff's classmate, "Sabrina". Sabrina declined to accept the client despite not having a client for months.

41. Upon information and belief, Defendant's policy states that once a client has been assigned to a student, the student must take the client. Despite the policy, both Sabrina, and another student declined to take the client. The other student declined because they were "studying for boards."

42. Ms. Keiger saw Plaintiff, told Plaintiff that she had a client and reassigned the customer that Sabrina and another student declined to Plaintiff. Plaintiff questioned being assigned a client two other students declined. Ms. Keiger told Plaintiff that she either had to accept the client or leave the building. None of the other students were advised they would have to leave the building or program for declining a client.

43. Ms. Keiger and Plaintiff continued to disagree about Ms. Keiger's requirement that Plaintiff accept the client or leave the building. Ultimately, Ms. Keiger contacted law enforcement to escort Plaintiff from the building. The responding officer advised Plaintiff to leave but informed her that she could return on December 7, 2020.

44. On December 7, 2020, Plaintiff went to EBS for class and to work. When Plaintiff attempted to clock in, she realized that she was removed from "TimeStar", Defendant's timekeeping system. Initially, Plaintiff was informed she was unable to clock in due to

8

her failure to provide the requested transcripts. Plaintiff was subsequently informed that she had been removed from the program due to her refusal to take a client.

45. Upon information and belief, Plaintiff was the only student who was required to provide transcripts.

46. Defendant did not provide Plaintiff with any administrative remedies concerning her dismissal from the Program.

47. EBS does not have an Office of Disability Services or comparable entity which could have assisted Plaintiff with obtaining a reasonable accommodation for her temporary disability.

48. EBS accepted nearly $20,000.00 in financial aid from the federal government for Plaintiff's enrollment in the program. Nonetheless, Defendant has repeatedly demanded an additional $8,000.00 from Plaintiff for enrollment in the Program.

49. Plaintiff was scheduled to matriculate from the program in April 2021.

50. Due to Defendant's disability discrimination against Plaintiff, and its failure to provide reasonable accommodations for her, Plaintiff was deprived of completing her degree, obtaining a her cosmetology license, and beginning her cosmetology career.

51. EBS unlawfully discriminated against Plaintiff due to her race and disability thereby denying her civil rights and causing her injury.

### FIRST CLAIM FOR RELIEF:
### AMERICANS WITH DISABILITIES ACT

52. Plaintiff realleges and incorporates by reference the foregoing allegations.

53. Plaintiff is a person with a disability protected by the ADA. 42 U.S.C. § 12102.

54. Defendant is a post-secondary school and is a place of public accommodation. 42 U.S.C. §§ 12181(7)(J).

55. Title III of the ADA provides that "no individual shall be discriminated against on the basis of disability in the *full and equal enjoyment* of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12181 (emphasis added).

56. Title III requires that places of public accommodation take necessary steps to "ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(ii) & (iii).

57. Defendant discriminated against Plaintiff when it failed to provide reasonable accommodations for her to demonstrate learned skills in the Program.

58. Defendant discriminated against Plaintiff when it failed to provide reasonable accommodations such as permitting Plaintiff to demonstrate her learned skills on mannequin heads instead of live customers.

59. Defendant discriminated against Plaintiff when it required Plaintiff to complete academic and nonacademic activities it did not require of other students in the Program.

60. Defendant discriminated against Plaintiff when it dismissed her from the program based on a purported violation of school policy and failed to provide Plaintiff with any administrative recourse to appeal the dismissal.

61. Plaintiff was harmed by Defendant's actions and has suffered as damages in excess of $75,000.00 as result of Defendant's discriminatory practices.

## SECOND CLAIM FOR RELIEF:
## SECTION 504 OF THE REHABILITATION ACT

62. Plaintiff realleges and incorporates by reference the foregoing allegations.

63. Plaintiff is a person with a disability protected by Section 504 of the Rehabilitation Act. 29 U.S.C. § 794(a)

64. Plaintiff is a qualified individual with a disability who met the academic and technical standards for admission to the EBS Program.

65. Defendant and EBS receive federal financial assistance from the federal Department of Education and is subject to Section 504 of the Rehabilitation Act. 29 U.S.C. § 794(a); 34 C.F.R. § 104.3(h).

66. A recipient of federal financial assistance must "make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant or student." 34 C.F.R. § 104.44(a).

67. In its course examinations or other procedures for evaluating students' academic achievement, a recipient of federal financial assistance must "provide such methods for evaluating the achievement of students who have a handicap that impairs sensory, manual, or speaking skills as will best ensure that the results of the evaluation represents the student's achievement in the course, rather than reflecting the student's impaired sensory, manual, or speaking skills (except where such skills are the factors that the test purports to measure)." 34 C.F.R. § 104.44(c).

11

68. Defendant discriminated against Plaintiff when it failed to provide reasonable accommodations (e.g. demonstrating learned skills on the mannequin head instead of live customers).
69. Defendant discriminated against Plaintiff when it required Plaintiff to complete academic and nonacademic activities it did not require of other students in the Program.
70. Defendant discriminated against Plaintiff when it dismissed her from the program based on a purported violation of school policy.
71. Plaintiff was harmed by Defendant's actions and has suffered as damages in excess of $75,000.00 as result of Defendant's discriminatory practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Kimberly Williams, respectfully requests that the Court:

1. Declare Defendant's failure to provide accommodations to Plaintiff to be discriminatory and a violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;
2. Order Defendant to reinstate Plaintiff to the Cosmetology Program;
3. Order Defendant to permit Plaintiff to take her final exams with reasonable accommodations;
4. Enjoin Defendant from denying Plaintiff reasonable accommodations to which she is entitled
5. Order Defendant to permit Plaintiff to matriculate from the Cosmetology Program if she obtains a satisfactory grade on her final exams;

6. Enter judgment in Plaintiff's favor in an amount to be determined at trial;

7. Award Plaintiff's attorneys' fees, expense, costs and other such amounts permissible by law; and

8. Grant any such further relief the Court deems just and proper.

Jury trial demanded.

Respectfully submitted, this the 13th day of May, 2021.

/s/ Neubia L. Harris
Neubia L. Harris
N.C. Bar No.: 42069
203 West Millbrook Road, Suite 101
Raleigh, NC 27609
(919) 526-0500 (telephone)
(919) 589-3935 (facsimile)
neubia@neubiaharrislaw.com

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that she has served a copy of the foregoing <u>COMPLAINT</u> on the opposing parties by via Certified Mail, Return Receipt Requested with the United States Postal Service as follows:

EEG, Inc. d/b/a Empire Education Group, Inc.
c/o Corporation Service Company, Registered Agent
2626 Glenwood Ave Ste 550
Raleigh, NC 27608

This the 13th day of May, 2021.

                                        /s/ Neubia L. Harris
                                        Neubia L. Harris
                                        N.C. Bar No.: 42069
                                        203 West Millbrook Road, Suite 101
                                        Raleigh, NC 27609
                                        (919) 526-0500 (telephone)
                                        (919) 589-3935 (facsimile)
                                        neubia@neubiaharrislaw.com